1

2

3

4

5

6

7

8                         UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    HOWARD A. YOUNG,                          No.  2:19-cv-01554 MCE GGH P

12                    Petitioner,

13        v.                                    FINDINGS AND RECOMMENDATIONS

14    JARED LOZANO,

15                    Respondent.

16

17

18    *Introduction and Summary*

19            Petitioner, a state prisoner proceeding pro se, has filed a petition for writ of habeas corpus

20    pursuant to 28 U.S.C. § 2254.  The matter was referred to the United States Magistrate Judge

21    pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302(c).

22            Defendant Howard Allen Young was convicted after jury trial of 14 counts of second-

23    degree burglary (Cal. Pen. Code §§ 459/460(b)), 14 counts of grand theft (Cal. Pen. Code §§ 484/

24    487(a)), and one count of selling stolen property (Cal. Pen. Code § 496(a)). The jury found as to

25    three counts of grand theft that the loss exceeded $50,000, and as to another count of grand theft

26    that the loss exceeded $150,000 (Cal. Pen. Code § 12022.6(a)(1) & (a)(2)). In addition, the jury

27    found that defendant had a prior serious felony conviction for kidnapping that qualified as a

28    *////*

1

1    strike. (Cal. Pen. Code § 1170.12.) After denying defendant's *Romero*[1] motion, the trial court

2    sentenced defendant to state prison for a term of 30 years and eight months.[2]

3    However, this present habeas corpus petition does not involve petitioner's conviction *per

4    se*.  Rather, it involves his consideration of early parole pursuant to Proposition 57 (California

5    Constitution, Section 32, article I.).  Petitioner believes he was denied due process and equal

6    protection of law because of the minimal review procedures involved, and because he was denied

7    the state law rights given to prisoners who were indeterminately sentenced when they are

8    considered for parole eligibility.

9    Although the petition is properly brought through a habeas corpus proceeding, petitioner

10    received the minimum due process which the Federal Due Process Clause provides, and he was

11    not denied protection under the Federal Equal Protection Clause. To the extent petitioner believes

12    state law was violated, such allegations are not cognizable in federal habeas corpus.  Accordingly,

13    the petition should be denied.

14    *Issues Presented*

15    Petitioner raises the following three issues in his habeas petition:

16    1.  Whether the Case Is Properly Brought in Federal Habeas Corpus;

17    2.  Whether Petitioner Received the Due Process Minimum; and

18    3.  Whether Petitioner Was Denied Equal Protection of the Laws.

19    Petitioner also sets forth in the petition, Issue 2, a barebones assertion: that in violation of the

20    Eighth Amendment the review board did not consider petitioner's mental health vis-à-vis rule

21    violations when considering his eligibility for early parole.  However, petitioner did not further

22    argue this unadorned point, or support it in any fashion, and the undersigned considers it waived.

23    Nevertheless, to the extent petitioner argues that the review was not based on sufficient evidence,

24    that assertion will be addressed within Issue 1.

25    Finally, the traverse raised the potential that petitioner was seeking to add a claim

26

27    [1] People v. Superior Court (Romero), 13 Cal. 4th 497 (1996).

28    [2] This paragraph is quoted from People v. Young, No. H030682, 2008 WL 1748341 (Cal. Ct.
App. Apr. 17, 2008) (footnotes omitted).

1    regarding his original sentencing.  The undersigned instructed petitioner to inform the court

2    whether petitioner was seeking to add a new (unexhausted) claim to the petition.  ECF No. 30.

3    Petitioner informed the undersigned that he was not raising such an issue in this petition.  ECF

4    No. 31.  Accordingly, this issue will not be considered.[3]

5    *Factual Background*

6         The pertinent facts surrounding the Proposition 57 process is provided below:

> On November 8, 2016, California voters passed Proposition 57,
> also known as the Public Safety and Rehabilitation Act of 2016,
> adding  section 32, article I, to the California Constitution. "As
> relevant here… [u]nder section 32(a)(1), "Any person convicted of
> a nonviolent felony offense and sentenced to state prison shall be
> eligible for parole consideration after completing the full term for
> his or her primary offense." And for purposes of section 32(a)(1),
> "the full term for the primary offense means the longest term of
> imprisonment imposed by the court for any offense, excluding the
> imposition of an enhancement, consecutive sentence, or alternative
> sentence." CDCR was directed to "adopt regulations in furtherance
> of these provisions, and the Secretary of [CDCR] shall certify that
> these regulations protect and enhance public safety." (Cal. Const.,
> art. 1, § 32, subd. (b).)

In re Gadlin, 31 Cal. App. 5th 784, 787-788 (2019).

     California Department of Corrections and Rehabilitation ("CDCR") did promulgate

regulations concerning the process of review:

> § 2449.4. Review on the Merits.
>
> (a) Within 30 calendar days of the conclusion of the notification
> process described under Section 2449.3, a hearing officer shall
> confirm the inmate is eligible for parole consideration under
> Section 3491 of Division 3 of this title and, if the inmate's
> eligibility is confirmed, review the inmate's case on the merits and
> determine whether to approve the inmate's release. If the inmate is
> determined to be ineligible for parole consideration under Section
> 3491 of Division 3 of this title, the hearing officer shall issue a
> written decision as specified in subsection (d) without conducting a
> review on the merits under subsection (b) and (c).
>
> (b) The hearing officer shall review and consider all relevant and
> reliable information about the inmate including, but not limited to:

---

[3] Moreover, the issue would not be properly posed in this habeas corpus action because the parole review proceeding at issue involves an entirely distinct proceeding than petitioner's original conviction.  Proceedings involving multiple, distinct determinations are not properly joined in one habeas corpus proceeding.  See Federal Rules Governing Section 2254 Cases, Rule 2(e).

(1) Information contained in the inmate's central file and the inmate's documented criminal history, including the inmate's Record of Arrests and Prosecutions (RAP sheets) and any return to prison with a new conviction after being released as a result of this section; and

(2) Written statements submitted by the inmate, any victims registered at the time of the referral, and the prosecuting agency or agencies that received notice under Section 2449.3.

(c) After reviewing and considering the relevant and reliable information, the hearing officer shall determine whether the inmate poses a current, unreasonable risk of violence or a current, unreasonable risk of significant criminal activity as determined by considering and applying the factors in Section 2449.5.

(d) The hearing officer shall issue a written decision that includes a statement of reasons supporting the decision. A copy of the decision shall be served on the inmate and placed in the inmate's central file within 15 business days of being issued. The board shall, within five business days of issuing a decision, send notice of the decision to any victim who was registered at the time of the referral and any prosecuting agency or agencies that received notice under Section 2449.3.

(e) If the hearing officer finds the inmate poses a current, unreasonable risk of violence or a current, unreasonable risk of significant criminal activity, the hearing officer shall deny release and issue his or her decision.

(f) If the hearing officer finds the inmate does not pose a current, unreasonable risk of violence or a current, unreasonable risk of significant criminal activity, the hearing officer shall approve release and issue his or her decision unless the decision will result in the inmate being released two or more years prior to his or her earliest possible release date. If the decision will result in the inmate being released two or more years prior to his or her earliest possible release date, the decision shall be reviewed by an associate chief deputy commissioner or the Chief Hearing Officer before it is finalized and issued. If the associate chief deputy commissioner or the Chief Hearing Officer does not concur with the hearing officer's decision, he or she shall issue a new decision approving or denying release.

(g) Inmates approved for release under this section shall be processed for release by the department as described in Section 3493 of Division 3 of this title.

(h) Inmates denied release under this section shall be reviewed for possible referral to the board again annually as provided in subsection 3492(b) of Division 3 of this title.

(i) Inmates may seek review of decisions issued under this section by writing the board in accordance with Section 2449.7 within 30

4

1    calendar days of being served the decision. Decisions issued under
     this section are not subject to the department's inmate appeal
2    process under Article 8 of Chapter 1 of Division 3 of this title.

3    (j) The time period specified in subsection (a) shall be extended as
     necessary to ensure all inmates referred to the board under
4    subsection (e) of Section 3492 of Division 3 of this title are
     reviewed by the board by no later than March 31, 2020

5
     Prisoners subject to review are given notice of the review and may submit a written
6
statement in support of parole:
7
     Eligible   determinately-sentenced   nonviolent   offenders   under
8    Section 3491 shall be referred to the Board of Parole Hearings for
     parole consideration at least 35 calendar days prior to their
9    nonviolent parole eligible date unless their nonviolent parole
     eligible date falls less than 180 calendar days prior to their earliest
10   possible release date or they will reach their earliest possible release
     date in less than 210 calendar days.
11
                                        ***
12
     Referral results under subsection (a) shall be served on the inmate
13   and placed in the inmate's central file within 15 business days of
     being completed and, if the inmate is referred to the Board of Parole
14   Hearings, the inmate shall be provided information about the
     nonviolent offender parole process, including the opportunity to
15   submit a written statement to the Board of Parole Hearings.

16   Cal. Code Regs. tit. 15, § 3492.

17        Petitioner does not contest the facts set forth in paragraph 6 of respondent's Answer.

18   Accordingly, these will be accepted as facts of the case:

19   Respondent admits and alleges that on July 1, 2018, Young was
     given notice that he was being referred to the Board for nonviolent
20   parole consideration.  Young was advised that he had thirty days to
     "submit a written statement explaining why you believe you would
21   not pose a current, unreasonable risk of violence, or a current,
     unreasonable risk of significant criminal activity." […] On August
22   13, 2018, Young received nonviolent parole consideration.    A
     deputy commissioner concluded that Young presents a current
23   unreasonable risk to the community and denied release. […]
     Young was provided a statement of reasons for the decision and
24   requested reconsideration of the decision. […] Young disagreed
     with the decision and requested reconsideration of the decision.
25   […] On September 11, 2018, the decision was reviewed and after
     consideration of all relevant factors, including Young's file, the
26   written decision denying release, and Young's request for
     reconsideration, the decision was upheld.

27

28   ECF No. 28 at 3.

Respondent goes on to allege further undisputed facts concerning the state habeas corpus process detailing the reasoned decision of the Superior Court, and the silent denials in the appellate and state supreme courts.  See ECF No. 28 at 3-4.[4] Specifically, the Superior Court found, citing Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1, 15 (1979), that the procedure set forth above adequately safeguarded against serious risks of error and thus satisfied due process.  Equal protection was not violated because petitioner was not similarly situated to the persons with whom he asserts similarity—i.e., those indeterminately sentenced prisoners who are seeing to be parole eligible.  Id. at 4.

This federal habeas petition was filed on July 8, 2019.  After a motion to dismiss, based on an assertion of a lack of habeas corpus jurisdiction, was denied, ECF Nos. 23, 24, an Answer was filed followed by petitioner's Traverse, ECF Nos. 28, 29.

*Discussion*

A. *Cognizability of Petitioner's Claims in Habeas Corpus*

Normally, a reassertion of an argument decided adversely in a prior motion is governed by law of the case, and nothing more need be said. However, after respondent filed the Answer, the United States Supreme Court decided Dep't of Homeland Sec. v. Thuraissigiam, 140 S. Ct. 1959 (2020). The holding in that case, which stresses the "release" component of the habeas corpus remedy, in order for a petition to be properly brought in habeas corpus, requires explication here. However, for the reasons expressed below, the previously found cognizability of the present petition in habeas corpus should be affirmed.

The undersigned first repeats herein the January 13, 2020 Findings & Recommendations discussion, ECF No. 23, which was adopted by the district judge:

> Citing Nettles, respondent asserts here that if petitioner were to prevail on his claim, the relief to be awarded "would not necessarily lead to immediate or speedier release." Nettles, supra, 830 F.3d at 934-935. As a result, respondent argues this court has no habeas corpus jurisdiction. Nettles cannot hold the weight assigned to it by respondent and it "necessarily" must be viewed in the context of

---

[4] As respondent sets forth, the reasoned decision of the Superior Court was presumed adopted by the higher courts because of the silent (unexplained) denials.  Ylst v. Nunnemaker, 501 U.S. 797, 798 (1991).

6

longstanding habeas corpus principles.

Nettles involved a claim by a prisoner serving an indeterminate life sentence that an expungement of his disciplinary violation and concomitant loss of time credits implicated his release status because his chances of parole in the future would be greatly benefitted without having the disciplinary violation considered at his future parole hearing.  The Ninth Circuit, *en banc*, found that the claim was too speculative to be heard in habeas corpus because disciplinary violations were but a factor in parole suitability determinations, and as such, would not sufficiently implicate a speedier setting of a parole date.  Nettles, 830 F.3d at 935.  And, because restoration of time credits could be entirely besides the point for an indeterminately sentenced, i.e., life imprisoned, petitioner, as opposed to a determinately sentenced prisoner where time credits actually reduce the adjudged incarceration sentence, there is no habeas rationale for reviewing a disciplinary conviction for the life prisoner.  See, Seviall v. Miller, 2016 8606772 *5 (S.D. Cal. 2016) citing In re Jenkins, 50 Cal. 4th 1167, 1179-1180 (2010).  The vast number of cases following Nettles have involved a claim similar to Nettles, or have been simply a variant on the same theme.  See, e.g., Myers v. Lorenzo, 2019 WL 5390035 (E.D. Cal. 2019); Gordon v. premo, 757 Fed.Appx. 627 (9th Cir. 2019).  But *cf.* Adams v. Frauenheim, 2018 WL 3046939 (N.D. Cal. 2018) (habeas jurisdiction existed for a claim asserting that new resentencing laws should be applied to the petitioner's sentence.)

The situation here is unlike Nettles in that petitioner here does not seek relief to obtain in a present proceeding, not itself implicating release on parole, some type of advantage for a *future* proceeding.  He contends that the alleged due process errors poisoned his *past* hearing *directly implicating release on parole.*  In asking in the FAP "for relief to which he may be entitled," petitioner impliedly asserts that he should be found suitable for parole and a parole date set, [or at least he should be given another try at achieving that result in the state system] as a result of deficiencies in the parole suitability hearing itself. Petitioner's situation is precisely the same as any petitioner who challenges his criminal judgment, or some specific aspect of it, e.g., evidentiary hearing finding a confession voluntary. A favorable outcome in the theorized habeas action does not guarantee the petitioner an acquittal or termination of his incarcerated status; the vast majority of favorable outcomes permit simply another chance to have his guilt adjudicated, another evidentiary hearing, or sentence recalculated and so forth— presumably without the previously found federal, constitutional error.  The vast majority of habeas outcomes do not order immediate release but rather give the state a chance to retry the case or otherwise rehear the matter at issue, without the error.

A federal court is vested " 'with the largest power to control and direct the form of judgment to be entered in cases brought up before it on habeas corpus.' " *Hilton v. Braunskill,* 481 U.S. 770, 775, 107 S.Ct. 2113, 2118, 95 L.Ed.2d 724 (1987) (quoting *In re Bonner,* 151 U.S. 242, 261, 14 S.Ct. 323, 327, 38 L.Ed. 149 (1894)). The court is

"free ... to fashion the remedy as law and justice require ... [and is not required] to order ... [petitioner's] immediate release from physical custody." *Davis v. Reynolds*, 890 F.2d 1105, 1112 (10th Cir.1989) (footnote omitted); see also Fed.R.App.P. 23(c). *"Generally, a district court ruling in the petitioner's favor in a habeas case provides a reasonable time in order to afford the State an opportunity to re-try the defendant or otherwise correct the constitutional infirmity."* *Bowen v. Maynard*, 799 F.2d 593, 614 n. 12 (10th Cir.), cert. denied, 479 U.S. 962, 107 S.Ct. 458, 93 L.Ed.2d 404 (1986).

Sanders v. Ratelle, 21 F.3d 1446, 1461 (9th Cir. 1994) (emphasis added).[5]

No one would argue with a straight face in the theorized criminal case that because there is only a *chance* for release from custody in the future criminal proceeding, the outcome is "speculative" in the sense that it does not "necessarily" require immediate or speedy release, and consequently the existing criminal judgment is not subject to habeas review.  Such an argument would raise the absurd possibility that habeas corpus jurisdiction is never possible after Nettles.

Here, if petitioner were to obtain favorable relief, he would obtain the same type of order as the petitioner in the theorized example above, i.e., a new parole suitability hearing which would presumably afford the due process which was allegedly lacking at the first hearing.[6]

The court has habeas corpus jurisdiction pursuant to 28 U.S.C. section 2254 to review the petition here.

ECF No. 23 at 2-5.

Thuraissigiam involved a petitioner who was seeking, not release, but "[a detainee who] invokes the writ to achieve an entirely different end, namely, to obtain additional administrative review of his asylum claim and ultimately to obtain authorization to stay in this country." Thuraissigiam, supra, 140 S. Ct. at 1963.  This recent case emphasized that release from custody is the function of habeas corpus remedy, but it did not rule that pre-release remedies were always off the table:

---

[5] [Originally Fn. 1] The order would generally be worded to the effect: proceedings for a new trial [or hearing] shall commence within __ days or the petitioner shall be released from custody.

[6] [Originally Fn. 2] Typically, such an order would require the reinstitution of a parole suitability hearing.  Depending on the circumstances the order might add that should no hearing take place within a specified time limit, petitioner shall have a parole date set or be released on parole.

> We come, finally, to the more recent cases on which respondent relies. The most recent, *Boumediene*, is not about immigration at all. It held that suspected foreign terrorists could challenge their detention at the naval base in Guantanamo Bay, Cuba. They had been "apprehended on the battlefield in Afghanistan" and elsewhere, not while crossing the border. 553 U.S. at 734, 128 S.Ct. 2229. They sought only to be released from Guantanamo, not to enter this country. *See*, *e.g.*, Brief for Petitioner Al Odah et al. in *Al Odah v. United States*, decided with *Boumediene v. Bush*, O. T. 2007, No. 061196, p. 39 (arguing that "habeas contemplates but one remedy," "release"). And nothing in the Court's discussion of the Suspension Clause suggested that they could have used habeas as a means of gaining entry. Rather, the Court reaffirmed that release is the habeas remedy *though not the "exclusive" result of every writ, given that it is often "appropriate" to allow the executive to cure defects in a detention.* 553 U.S. at 779, 128 S.Ct. 2229.

Thuraissigiam, 140 S.Ct. at 1981 (emphasis added).

Indeed, the above quote speaks exactly to what petitioner seeks here—a **release** from prison pursuant to expedited parole consideration. The mere fact that the conditional release remedy here (if the habeas petition were to be granted) would also serve a comity purpose by giving the state courts a chance to correct the due process defect in lieu of immediate, outright release, is not a reason to find that habeas corpus cognizability is absent.

B. *Petitioner's Due Process Arguments Are Foreclosed by Supreme Court Precedent*

In Swarthout v. Cooke, 562 U.S. 216 (2011), reviewing the *federal* due process requirements of California's parole eligibility procedures for indeterminately sentenced prisoners, procedures which in state law give all the due process requested by petitioner here, greatly circumscribed the federal due process required. The Swarthout court held that: "In *Greenholtz*, we found that a prisoner subject to a parole statute similar to California's received adequate process when he was allowed an opportunity to be heard and was provided a statement of the reasons why parole was denied. *Id.*, at 16, 99 S.Ct. 2100. 'The Constitution,' we held, 'does not require more.' *Ibid.*" Id. at 220. The procedures for sped up parole consideration provide that petitioner be given notice that he is being considered for expedited parole, that he be allowed to submit a written statement advocating for his inclusion in the expedited parole result, and that he be informed of the decision. There is no federal requirement that petitioner be physically present at the consideration, that he be allowed to ask questions, or that he be represented by counsel, that

9

1   mental health be mandatorily considered, that there be "some evidence" supporting the denial, or

2   any other procedural "right."[7]

3       The state courts' determinations that petitioner was afforded due process, as that process

4   is required by the federal Constitution, were correct pursuant to 28 U.S.C. § 2254, as amended by

5   the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").[8]

6       C.   *Petitioner's Equal Protection Arguments Are Unavailing*

7       Petitioner has a misapprehension that his status is substantially similar to those prisoners

8   who are serving indeterminate sentences, i.e., some type of life in prison sentence with the

9   possibility of parole, and who are seeking parole *eligibility* so that they may one day be afforded

10  parole as opposed to being given a parole release date *per se*.  That is, petitioner has a parole right

11  built into his determinate sentence; he is *already, and mandatorily* eligible for parole. Terhune v.

12  Superior Court, 65 Cal. App. 4th 864, 873-74 (1998); Gardner v. Runnels, No. 1:02CV-

13  05523TAGHC, 2005 WL 2405876, at *11 (E.D. Cal. Sept. 28, 2005). The issue in petitioner's

14  case is whether, pursuant to Proposition 57,  his parole should be accelerated from when it would

15  ordinarily occur.  The fact that life prisoners with the possibility of parole may be afforded

16  "extra" procedures under state law for determining parole eligibility may well be necessary in that

17  the life prisoners, as opposed to petitioner, have no established right to parole in the first place;

18  their situation is grossly more dire than petitioner's in that life prisoners, without parole

19  eligibility, may *never* see life outside a prison's walls.

20      The Superior Court found that petitioner, an already parole eligible inmate, was not

21  similarly situated to those indeterminately sentenced to life imprisonment prisoners who were

22  seeking to be eligible for parole one day down the line.  The Superior Court was unquestionably

23  correct.  And, being similarly situated to a group of persons who may be given some extra

24  procedural or substantive rights that a petitioner seeks in his case is the *sine qua non* for

[7] And, of course, there is no Eighth Amendment authority that parole consideration be attended
25  with procedural protections lest the lack of parole be considered "cruel and unusual."  Petitioner's
26  argument to this effect is simply a reiteration of his due process concerns.

[8] Even if the state law mandated procedures at issue here went beyond those federal minima
27  discussed above, this court would have no authority to rule on the correctness of those procedures
28  vis-a-vis petitioner's case. Swarthout, 562 U.S. at 221-222.

1    application of the Federal Equal Protection Clause of the Fourteenth Amendment. See, e.g.,

2    Gallinger v. Bercerra, 898 F.3d 1012, 1016-1017 (9th Cir. 2018). Accordingly, petitioner's equal

3    protection argument fails.

4    *Conclusion*

5          Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must

6    issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A

7    certificate of appealability may issue only "if the applicant has made a substantial showing of the

8    denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons set forth in these

9    findings and recommendations, a substantial showing of the denial of a constitutional right has

10   not been made in this case.

11         Accordingly, IT IS HEREBY RECOMMENDED that:

12         1.  This court, having jurisdiction to review petitioner's habeas petition, should DENY the

13   petition on its merits; and

14         2.  The District Court decline to issue a certificate of appealability.

15         These findings and recommendations are submitted to the United States District Judge

16   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

17   after being served with these findings and recommendations, any party may file written

18   objections with the court and serve a copy on all parties.  Such a document should be captioned

19   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

20   shall be served and filed within fourteen days after service of the objections.  The parties are

21   advised that failure to file objections within the specified time may waive the right to appeal the

22   District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

23   DATED: July 27, 2020

24                          /s/ Gregory G. Hollows
                    UNITED STATES MAGISTRATE JUDGE

25

26

27

28

11